Michael S. Held
State Bar No. 09388150
Vienna F. Anaya
State Bar No. 24091225
JACKSON WALKER LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201
(214) 953-6000 – Telephone
Email: mheld@jw.com
Email: vanaya@jw.com

*Counsel to CrossFirst Bank*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| BOWIE REAL ESTATE HOLDINGS, LP | § | CASE NO. 20-70115-hdh11 |
| | § | |
| | § | |
| DEBTOR. | § | |

**CROSSFIRST BANK'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

**PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(b), A RESPONSE IS REQUIRED TO THIS MOTION, OR THE ALLEGATIONS IN THE MOTION MAY BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGHT MAY BE ENTERED BY DEFAULT.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, ROOM 1254, DALLAS, TEXAS 75242 BEFORE CLOSE OF BUSINESS ON JULY 27, 2020, WHICH IS AT LEAST 14 DAYS FROM THE DATE OF SERVICE HEREOF. A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY AND ANY TRUSTEE OR EXAMINER APPOINTED IN THE CASE. ANY RESPONSE SHALL INCLUDE A DETAILED AND COMPREHENSIVE STATEMENT AS TO HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE STAY IS TO BE CONTINUED.**

TO THE HONORABLE HARLIN D. HALE, CHIEF U.S. BANKRUPTCY JUDGE:

COMES NOW, CrossFirst Bank, a secured creditor in the above-captioned chapter 11 bankruptcy case, ("**CrossFirst**"), and files this its *Motion to Relief from the Automatic Stay* (the "**Motion for Relief From Stay**"), and in support thereof submits the *Declaration of Dustin Gibson in Support of CrossFirst Bank's Motion for Relief From the Automatic Stay* (the "**Gibson Declaration**"), attached hereto as **Exhibit 1**, and respectfully states as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Northern District of Texas (this "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408.

3. The statutory basis for the relief requested in the Motion are 11 U.S.C. §§ 105 and 362 of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

4. Bowie Real Estate Holdings, LP (the "**Debtor**"), is a Texas limited partnership, whose general partner is Bowie Real Estate Holdings GP, LLC ("**BREH GP**"). The managing members of BREH GP are Hasan F. Hashmi ("**H. Hashmi**") and Faraz F. Hashmi ("**F. Hashmi**"). The Debtor owns certain real property in Montague County, Texas commonly known as 705 East Greenwood Ave., Bowie, Texas 76230 (as more fully described in Exhibit A to the Deed of Trust) (the "**Real Property Collateral**"), upon which affiliate Central Hospital of Bowie, LP ("**CHB**") operated a hospital prior to February 2020, without remitting pre-petition rent to the Debtor (owing the Debtor at least $150,000 as of the Petition Date. *See* Amended Schedules A/B [ECF No. 22]

(as amended, "**Schedule A/B**"). CHB is still the affiliated tenant on the Real Property Collateral. *See* Schedule G, in Schedules D-H [ECF No. 13] ("**Schedules D-H**," and together with Schedule A/B, as amended, the "**Schedules**"). CHB is also the primary obligor under loans extended to it by CrossFirst, for which the Debtor is guarantor. CHB's general partner is Central Hospital Systems LLC ("**Systems**"). Systems' managing members are also H. Hashmi and F. Hashmi. The first 341 meeting of the creditors occurred on May 27, 2020 (the "**341 Meeting**"). At the 341 Meeting, F. Hashmi testified that he is the person in control of both the Debtor and CHB.

5. On December 14, 2017, CHB and CrossFirst entered into a loan (the "**Loan**") evidenced by, among other things, that certain (i) Business Loan Agreement dated December 14, 2017, in the original principal amount of $2,500,000 (the "**Loan Agreement**") and (ii) that certain Promissory Note dated December 14, 2017, in the original principal amount of $2,500,000.00 (the "**Note**"). The Note matured on December 14, 2019. True and correct copies of the Loan Agreement and the Note are attached to the Gibson Declaration as **Exhibit A** and **Exhibit B**, respectively.

6. Under the terms of the Note, CHB was obligated to pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning January 14, 2018, and continuing through December 14, 2019, at which time, the remaining amount of principal and accrued unpaid interest was payable in full. The interest rate for the Note is based on the Wall Street Journal Prime Rate. The Note provides that, among other things, CHB's failure to make any payment when due under the Note is an event of default.

7. To secure repayment of the Loan, CHB entered into that certain Commercial Security Agreement dated December 14, 2017 (the "**Security Agreement**," and along with the Loan Agreement and the Note, collectively referred to herein as the "**Loan Documents**"), granting

to CrossFirst a blanket security interest in all of its assets (the "**CHB Collateral**"). CrossFirst perfected its security interest in the CHB Collateral by filing a UCC-1 financing statement on December 20, 2017, with the Texas Secretary of State, which was assigned Filing No. 17-0042621548.

8. As further security for the repayment of the Loan, the Debtor, F. Hashmi and H. Hashmi each executed a Commercial Guaranty for the benefit of CrossFirst, each guarantying the full amount of the Loan. A true and correct copy of the Commercial Guaranty executed by the Debtor is attached to the Gibson Declaration as **Exhibit C**.

9. In addition, as security for the repayment of the Loan, the Debtor executed that certain Deed of Trust granting to CrossFirst a first lien security interest in the Real Property Collateral (the "**Deed of Trust**"). The Deed of Trust was duly filed with the County Clerk for Montague County, Texas on December 20, 2017 as Instrument No. 1705221. A true and correct of the Deed of Trust is attached to the Gibson Declaration as **Exhibit D**.

10. On the December 14, 2019 maturity date, CHB, the Debtor, F. Hashimi, and H. Hashimi failed to pay the amounts due under the Note to CrossFirst. CHB further defaulted by its failure to pay real estate tax payments for the years 2018 and 2019 to Montague County, where CHB operated. By February 2020, CHB ceased its operations at the Real Property Collateral.

11. CrossFirst made repeated demands for payment from CHB, including though various telephone conferences, and delivered notices of default on the following dates: February 28, 2020, March 4, 2020 and March 13, 2020. True and correct copies of the demand letters are attached to the Gibson Declaration as **Exhibits E-G.** To date, CHB has not made any further payments due under the Note. Pursuant to the terms of the Loan Documents, CHB is in default. Despite demand, the Note remains unpaid.

12. On March 17, 2020, CrossFirst properly noticed its intent to foreclose on the Real Property Collateral for April 7, 2020. A true and correct copy of the notice of intent to foreclose is attached to the Gibson Declaration as **Exhibit H**.

13. On or about April 6, 2020 (the "**Petition Date**"), the Debtor filed its voluntary petition (the "**Petition**") for relief under chapter 11 of the Bankruptcy Code. The Debtor made its election to be treated as a single asset real estate business in its Voluntary Petition [ECF No. 1, as amended by ECF No. 17] (as amended, the "**Petition**"). *See* Petition, at p. 2.

14. As stated in Proof of Claim No. 6 filed by CrossFirst, the total balance outstanding under the Loan as of the Petition Date was **$1,750,476.86**, comprised of the following unpaid principal, interest, late fees, costs, and professional fees incurred in connection with the enforcement of the Loan Documents:

| | |
|---|---:|
| Principal Balance | $1,647,767.30 |
| Interest | $39,315.32[1] |
| Late Fees | $293.68 |
| Costs | $5,000.00 |
| Professional Fees | $58,100.56 |
| **TOTAL** | **$1,750,476.86** |

15. The foregoing amount does include interest, fees, expenses and other costs accrued after the Petition Date.

16. The Debtor's Schedules and Amended Statement of Financial Affairs [ECF No. 23] (the "**SOFA**"), reflect that (a) the Debtor has no cash flow;[2] (b) the Debtor has no sources of income to sustain a plan of reorganization;[3] and (c) the Debtor has only two scheduled unsecured

---

[1] Per diem interest charges accrue at $217.41 per day.
[2] *See* SOFA, at p. 1.
[3] *See* SOFA, at pp. 1-2.

creditors–US Premium Finance (allegedly owed $7,313.82) and insider Hashmi Law Group (allegedly owed $300,000).[4]

17. At the 341 Meeting, F. Hashmi, as managing member of BREH GP (the Debtor's general partner), limited partner of the Debtor, and person in control of the Debtor, testified, among other things, that (a) the Debtor has no employees; (b) he is (i) the managing member or the general partner of CHB, (ii) a limited partner of CHB, and (iii) the person in control of CHB; (c) H. Hashimi's law firm, Hashmi Law Group, is set forth on Schedule D-H as allegedly being owed $300,000.00,[5] comprised of unpaid a monthly $10,000 legal retainer for acting as general counsel for the Debtor; and (d) the entirety of the accounts receivable listed on the Debtor's Schedules is pre-petition rent owed by CHB.

## RELIEF REQUESTED

18. By this Motion, CrossFirst requests that the Court enter an order in the form attached hereto as **Exhibit 2**, terminating the automatic stay to allow CrossFirst to exercise any and all of its rights and remedies, including foreclosure on the Real Property Collateral pursuant to 11 U.S.C. § 362(d)(1) and (3). CrossFirst further requests that any order granting the relief requested in this Motion be effective immediately, thereby waiving the 14-day stay of such orders pursuant to Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure.

## BASIS FOR RELIEF

**A. THE AUTOMATIC STAY SHOULD BE LIFTED FOR "CAUSE" PURSUANT TO 11 U.S.C. 362(D)(1).**

19. First, cause exists to lift the stay because the Debtor commenced this Bankruptcy Case in bad faith. It is well settled that a court will find cause to lift the automatic stay where it

---

[4] *See* Schedule D-H, at p. 13.
[5] *See* Schedule D-H, at p. 13.

has been shown the debtor filed its bankruptcy petition in bad faith. *Matter of Little Creek Dev. Co.*, 779 F.2d 1068–1072 (5th Cir. 1986); *In re Porter*, 371 B.R.739, 745 (Bankr. E.D. Penn. 2007) (holding that grounds for dismissal for bad faith failing constitute grounds for relief from stay "for cause"). As recognized by the Fifth Circuit, findings of lack of good faith in proceedings based on section 362(d) "have been predicated on certain recurring but non-exclusive patterns, and . . . are based on a conglomerate of factors rather than on any single datum." *Matter of Little Creek Dev. Co.*, 779 F.2d 1068, 1072–73 (5th Cir. 1986). The Court further noted that "[s]everal but not all of the following conditions usually exist:"

> The debtor has one asset, such as a tract of undeveloped or developed real property. The secured creditors' liens encumber this tract. There are generally no employees except for the principals, little to no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments pursuant to 11 U.S.C. §§ 361, 362(d)(1), 363(e), or 364(d)(1). Typically, there are only a few, if any, unsecured creditors whose claims are relatively small. The property has usually been posted for foreclosure because of arrearages on the debtor and the debtor has been unsuccessful in defending actions against the foreclosure in state court. Alternatively, the debtor and one creditor may have proceeded to a stand-still in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford. Bankruptcy offers the only possibility of forestalling loss of the property. There are sometimes allegations of wrongdoing by the debtor or its principals.

*Id.* at 1072–73. *See also Philadelphia Rittenhouse Developer, LP,* No. 10-31201, 2011 WL 13043475, at *8–10 (Bankr. E.D. Pa. May 25, 2011 (quoting *In re SB Properties, Inc.*, 185 B.R. 198, 205 (Bankr. E.D. Pa. 1995)) (the court analyzed the following factors: (1) Debtor has few or no unsecured creditors; (2) there has been a previous bankruptcy petition by the Debtor or related entity; (3) the prepetition conduct of the Debtor has been improper; (4) the petition effectively allows the Debtor to evade court orders; (5) there are few debts to non-moving creditors; (6) *the petition was filed on the eve of foreclosure*; (7) the foreclosed property is the sole major asset of

7

the Debtor; (8) the Debtor has no ongoing business or employees; (9) there is no possibility of reorganization; (10) the Debtor's income is not sufficient to operate; (11) *the reorganization essentially involves the resolution of a two-party dispute;* and (12) the Debtor filed solely to create the automatic stay) (emphasis added).

20. A court's analysis of these factors determines whether a debtor is using the bankruptcy process to achieve objectives outside the scope of bankruptcy laws. Thus, the "good faith" requirement ensures that the Bankruptcy Code's careful balancing of interests is not undermined by debtors whose aims are antithetical to the basic purposes of bankruptcy and prevents abuse of the bankruptcy process by debtors whose overriding motive is solely to delay creditors. *In re Telecom Express, Inc.*, 384 F.3d 108, 119 (3d Cir. 2004). "Good faith implies an honest intent and genuine desire on the part of the petitioner to use the statutory process to effect a plan of reorganization, and not merely as a device to serve some sinister or unworthy purpose." *In re Metropolitan Realty Corp.*, 433 F.2d 676, 678 (5th Cir. 1970).

21. As more thoroughly described in *CrossFirst Bank's Motion to Dismiss the Debtor's Chapter 11 Bankruptcy Case Pursuant to 11 U.S.C. § 1112(b)(1)* [ECF No. 26], which is incorporated herein in its entirety, the totality of the circumstances weigh heavily in favor of finding bad faith. To begin, the Debtor filed the Bankruptcy case to obtain tactical litigation advantages and prevent CrossFirst's foreclosure on the Real Property Collateral. The Debtor and CrossFirst have been involved in a two-party dispute stemming from the Debtor's failure to satisfy its obligations under the Loan since December 2019. After the Debtor failed to comply with CrossFirst's repeated demands for payment, on March 17, 2020, CrossFirst noticed its intent to foreclose on the Real Property Collateral for April 7, 2020. Rather than face foreclosure, the Debtor filed its voluntary petition on the eve of foreclosure—April 6, 2020—checking the "Single-

Asset Real Estate" box to describe Debtor's business on its Petition. *Compare* with *Matter of Little Creek Dev. Co.*, 779 F.2d 1073 ("The 'new debtor syndrome,' in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies, although it does not uniquely categorize, bad faith cases."); *Chitex Communication, Inc. v. Kramer*, 168 B.R. 587, 589 (S.D. Tex. 1994) (bankruptcy filing constituted bad faith since it was done on the eve of the foreclosure sale in an effort to evade the state judgment). This is "perhaps the clearest possible example of a litigation tactic." *Philadelphia Rittenhouse Developer, LP*, 2011 WL 13043475, at *9 (determining that the Debtor filed for bankruptcy solely to avoid a state court order when it filed seven minutes before an order dispossessing the Debtor was entered). The Debtor undoubtedly filed its Bankruptcy Case in order to delay the inevitable foreclosure of the Real Property Collateral.

22. Additionally, the Debtor has no possibility of reorganization. The Debtor's own pleadings establish that the Debtor has no cash flow and has no sources of income to sustain a reorganization plan. *See* SOFA, at pp. 1-2. With no cash flow or sources of income, the Debtor cannot provide adequate protection to retain the Real Property Collateral during the Bankruptcy Case. The Debtor's tactics have damaged, and continue to damage, CrossFirst's interest in the Real Property Collateral.

23. Under these circumstances, the Debtor's bankruptcy case was filed in bad faith. The Debtor's filing constitutes an abuse of the protections afforded by the Bankruptcy Code to the detriment of CrossFirst. "Neither the bankruptcy courts nor the creditors should be subject to the costs and delays of a bankruptcy proceeding under such conditions." *Matter of Little Creek Dev. Co.*, 779 F.2d at 1073. As such, the Court should lift the automatic stay for cause pursuant to 11 U.S.C. § 362(d)(1).

**B.     11 U.S.C. § 362(D)(3) MANDATES THE LIFTING OF THE AUTOMATIC STAY.**

24.    Second, but certainly as clear a basis upon which to grant CrossFirst's requested relief, 11 U.S.C. 362(d)(3) *mandates* the lifting of the automatic stay in the instant case. Section 362(d)(3) provides that relief from the stay of acts against "single asset real estate" *must* be granted unless, within the latest of (a) 90 days after the order for relief; (b) such longer period as the court determines during the initial 90-day period; or (c) 30 days after the court determines that the debtor is subject to the single asset real estate provisions, the debtor files a reorganization plan that has a reasonable probability of being confirmed within a reasonable time, or the debtor has commenced monthly payments equal to interest at the then applicable non-default contract rate of interest on the value of a consensual lien creditor's interest in the property. *See, e.g.*, *In re Pioneer Austin E. Dev. I, Ltd.*, 10-30177-HDH-11, 2010 WL 2671732, at *3 (Bankr. N.D. Tex. July 1, 2010) (noting that the automatic stay *will* terminate should the debtor fail to comply with the requirements of 362(d)(3)); *In re 9 Houston LLC*, 578 B.R. 600, 616 (Bankr. S.D. Tex. 2017) ("Section 362(d)(3) sets forth that in a single asset real estate case . . . a debtor must file a plan by the 90th day or begin making monthly cash payments to the lienholder, and if neither of these events occurs, then [the] Court *must* terminate . . . the automatic stay with respect to the lienholder's collateral.") (emphasis added).

25.    "Single asset real estate" is defined as real property consisting of a single property or project, other than a residential property with fewer than four units, which generates substantially all of the gross income of a debtor who is not a family farmer, on which no substantial business is being operated other than operating the real property. 11 U.S.C. § 101(51B). The purpose of section 362(d)(3) is to address perceived abuses in single asset real estate cases, in which debtors have attempted to delay mortgage foreclosures even when there is little chance that

they can reorganize successfully. *See In re LDN Corp.*, 191 B.R. 320, 327 (Bankr. E.D. Va. 1996) (section 362(d)(3) "was enacted to assist secured creditors in single asset real estate cases").

26. Here, the Debtor made the single asset real estate election in its Petition on April 6, 2020. Ninety (90) days have passed since the filing of the Petition and the Debtor has not proposed a plan of reorganization, nor has the Debtor made any post-petition payments to CrossFirst. Even if Section 362(d)(3) did not mandate the lifting of the automatic stay where the requirements therein are not met within 90 days of the entry of the order for relief in this case, with no cash flow or sources of income, there is little chance that the Debtor can file a plan of reorganization that has a reasonable probability of being confirmed *at all*, let alone with confirmation occurring within a reasonable time. It is just as improbable that the Debtor could have commenced monthly payments as prescribed by § 362(d)(3). Regardless, the 90 day period set forth in § 362(d)(3) expired on or about July 5, 2020, without the Debtor having satisfied any of the requirements set forth therein to maintain the automatic stay. As such, the language of § 362(d)(3) mandates the granting of the relief requested herein.

27. Accordingly, this Court should recognize Debtor's filing as nothing more than an attempt to frustrate and delay CrossFirst from foreclosing on the Real Property Collateral, and, to that end, lift the stay pursuant to § 362(d)(3).

WHEREFORE, CrossFirst requests that the Court grant the relief requested in this Motion and enter an Order (i) terminating the automatic stay to allow CrossFirst to exercise all its rights and remedies under state law with respect to the Real Property Collateral, including foreclosure of the Real Property Collateral; (ii) waiving the fourteen day stay of such order; and (iii) granting such other and further relief as if just, as to which it may be justly entitled.

Dated: July 10, 2020

        Respectfully submitted,

        Jackson Walker LLP
        2323 Ross Avenue, Suite 600
        Dallas, Texas 75201
        Telephone: (214) 953-6000
        Facsimile: (214) 953-5822

        /s/ *Michael S. Held*
        *Michael S. Held*
        State Bar No. 09388150
        (214) 953-5859 – direct dial
        (214) 661-5822 –fax
        Email: mheld@jw.com

        Vienna F. Anaya
        State Bar No. 24091225
        (214) 953-6047 – direct dial
        (214) 661-5822 – fax
        Email: vanaya@jw.com

        **ATTORNEYS FOR CROSSFIRST BANK**

**CERTIFICATE OF SERVICE**

  I certify that on July 10th, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing (ECF) System for the United States Bankruptcy Court for the Northern District of Texas, and/or via regular first-class U.S. mail, postage prepaid, on all parties on the attached matrix where ECF Notice was not possible.

                   /s/ *Michael S. Held*
                   Michael S. Held

## CERTIFICATE OF CONFERENCE

I hereby certify that, on July 10th, 2020, I spoke with the John Paul Stanford, Debtors' counsel, regarding the relief requested in this Motion and requesting the Debtors' position with respect to same. Debtors' counsel opposes the relief requested in the Motion.

/s/ *Michael S. Held*
Michael S. Held