## **EXHIBIT 1**

**Gibson Declaration**

Michael S. Held
State Bar No. 09388150
Vienna F. Anaya
State Bar No. 24091225
JACKSON WALKER LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201
(214) 953-6000 – Telephone
Email: mheld@jw.com
Email: vanaya@jw.com

*Counsel to CrossFirst Bank*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| BOWIE REAL ESTATE HOLDINGS, LP | § | CASE NO. 20-70115-hdh11 |
| | § | |
| | § | |
| DEBTOR. | § | |

## <u>DECLARATION OF DUSTIN GIBSON IN SUPPORT OF CROSSFIRST BANK'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY</u>

Pursuant to 28 U.S.C. § 1746, I hereby state under penalty of perjury that the following facts are true and correct:

1.      My name is Dustin Gibson.  I am over the age of twenty-one years, and I am fully competent to make this declaration (the "**Declaration**").  I am a Private Banker for CrossFirst Bank ("**CrossFirst**"), a secured creditor in the above-referenced case, and have been at all times material herein.  In that capacity, I have gained personal knowledge of the facts and circumstances described in this Declaration and the documents and records attached hereto, except those matters stated upon information and belief.  The facts stated in this Declaration are true and correct.  If called as a witness, I could and would competently testify regarding the matters set forth in this

1

Declaration. To the extent that I obtain additional information that requires further disclosure, a supplemental declaration will be submitted to the Court.

2. I am one of the custodians of records, books, files and banking records of CrossFirst. The attached records are kept by CrossFirst in the ordinary course of its business and it was the regular course of business of CrossFirst for an employee or representative of CrossFirst, with knowledge of the event recorded to make the record or transmit information thereof to be included in the record. The records were made at or near the time of the transaction between CrossFirst and Bowie Real Estate Holdings, LP (the "**Debtor**"), Bowie Real Estate Holdings GP, LLC ("**BREH GP**"), Hasan F. Hashmi ("**H. Hashmi**"), Faraz F. Hashmi ("**F. Hashmi**"), and Central Hospital of Bowie, LP ("**CHB**").

3. The Declaration provides information in support of *CrossFirst Bank's Motion For Relief from the Automatic Stay* (the "**Motion**").

4. On December 14, 2017, CHB and CrossFirst entered into a loan (the "**Loan**") evidenced by, among other things, that certain (i) Business Loan Agreement dated December 14, 2017, in the original principal amount of $2,500,000 (the "**Loan Agreement**") and (ii) that certain Promissory Note dated December 14, 2017, in the original principal amount of $2,500,000.00 (the "**Note**"). The Note matured on December 14, 2019. True and correct copies of the Loan Agreement and the Note are attached hereto as **Exhibit A** and **Exhibit B**, respectively.

5. Under the terms of the Note, CHB was obligated to pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning January 14, 2018, and continuing through December 14, 2019, at which time, the remaining amount of principal and accrued unpaid interest was payable in full. The interest rate for the Note is based on the Wall

Street Journal Prime Rate.  The Note provides that, among other things, CHB's failure to make any payment when due under the Note is an event of default.

6.      To secure repayment of the Loan, CHB entered into that certain Commercial Security Agreement dated December 14, 2017 (the "**Security Agreement,**" and along with the Loan Agreement and the Note, collectively referred to herein as the "**Loan Documents**"), granting to CrossFirst a blanket security interest in all of its assets (the "**CHB Collateral**"). CrossFirst perfected its security interest in the CHB Collateral by filing a UCC-1 financing statement on December 20, 2017, with the Texas Secretary of State, which was assigned Filing No. 17-0042621548.

7.      As further security for the repayment of the Loan, the Debtor, F. Hashmi and H. Hashmi each executed a Commercial Guaranty for the benefit of CrossFirst, each guarantying the full amount of the Loan.  A true and correct copy of the Commercial Guaranty executed by the Debtor is attached hereto as **Exhibit C**.

8.      In addition, as security for the repayment of the Loan, the Debtor executed that certain Deed of Trust granting to CrossFirst a first lien security interest in certain real property owned by the Debtor in Montague County, Texas commonly known as 705 East Greenwood Ave., Bowie, Texas 76230 (as more fully described in Exhibit A to the Deed of Trust) (the "**Real Property Collateral**") (the "**Deed of Trust**").  The Deed of Trust was duly filed with the County Clerk for Montague County, Texas on December 20, 2017 as Instrument No. 1705221.  A true and correct of the Deed of Trust is attached hereto as **Exhibit D**.

9.      On the December 14, 2019 maturity date, CHB, the Debtor, F. Hashmi, and H. Hashmi failed to pay the amounts due under the Note to CrossFirst.  CHB further defaulted by its failure to pay real estate tax payments for the years 2018 and 2019 to Montague County, where

3

CHB operated. By February 2020, CrossFirst was informed that CHB had ceased its operations at the Real Property Collateral.

10.    CrossFirst made repeated demands for payment from CHB, including though various telephone conferences, and delivered notices of default on the following dates: February 28, 2020, March 4, 2020 and March 13, 2020. True and correct copies of the demand letters are attached hereto as **Exhibits E-G.** Since prior to the maturity date, CHB has not made any further payments due under the Note. Pursuant to the terms of the Loan Documents, CHB is in default. Despite demand, the Note remains unpaid.

11.    On March 17, 2020, CrossFirst properly noticed its intent to foreclose on the Real Property Collateral for April 7, 2020. A true and correct copy of the notice of intent to foreclose is attached hereto as **Exhibit H**.

12.    On April 6, 2020 (the "**Petition Date**"), the day before foreclosure of the Real Property Collateral, CrossFirst was notified that the Debtor had filed its voluntary petition (the "**Petition**") for relief under chapter 11 of the Bankruptcy Code.

13.    As of the Petition Date, the total balance outstanding under the Loan was $1,750,476.86, comprise of the following amounts:[1]

| | |
|---|---:|
| Principal Balance | $1,647,767.30 |
| Interest | $39,315.32[2] |
| Late Fees | $293.68 |
| Costs | $5,000.00 |
| Professional Fees | $58,100.56 |
| **TOTAL** | **$1,750,476.86** |

14.    The foregoing amount does include interest, fees, expenses and other costs accrued after the Petition Date.

---

[1]    All late fees, costs, and professional fees were incurred in connection with enforcement of the Loan Documents.

[2]    Per diem interest charges accrue at $217.41 per day.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __9__ day of July, 2020, in __Dallas, Texas__

_____
Dustin Gibson

# **<u>EXHIBIT A</u>**

# BUSINESS LOAN AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,500,000.00 | 12-14-2017 | 12-14-2019 | 3814-1 | 1G32 / 62 | | DCG | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Central Hospital of Bowie LP
5005 LBJ Freeway Ste. 1400
Dallas, TX 75224

**Lender:** CrossFirst Bank
Dallas Market
2021 McKinney Avenue
Suite 800
Dallas, TX 75201

**THIS BUSINESS LOAN AGREEMENT dated December 14, 2017, is made and executed between Central Hospital of Bowie LP ("Borrower") and CrossFirst Bank ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.**

**TERM.** This Agreement shall be effective as of December 14, 2017, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

**ADVANCE AUTHORITY.** The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: **Hasan F. Hashmi, Manager of Central Hospital Systems LLC, General Partner of Central Hospital of Bowie LP; and Faraz F. Hashmi, Manager of Central Hospital Systems LLC, General Partner of Central Hospital of Bowie LP.**

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) guaranties; (6) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Organization.** Borrower is a partnership which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Texas. Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Specifically, Borrower is, and at all times shall be, duly qualified as a foreign partnership in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Borrower maintains an office at 5005 LBJ Freeway Ste. 1400, Dallas, TX 75224. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's principal office address or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: **None.**

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles or agreements of partnership, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to

## BUSINESS LOAN AGREEMENT
| | | |
|---|---|---|
| Loan No: 3814-1 | **(Continued)** | Page 2 |

all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with the following:

**Annual Statements.** As soon as available, but in no event later than 45 days after the end of each fiscal year, Borrower's balance sheet and income statement for the year ended, prepared by Borrower.

**Tax Returns.** As soon as available, but in no event later than thirty (30) days after the applicable filing date for the tax reporting period ended, Borrower's Federal and other governmental tax returns, prepared by a certified public accountant satisfactory to Lender.

**Additional Requirements. Personal Financial Statements** (including applicable Trusts/Businesses). As soon as available, but in no event later than 45 days after the one year anniversary of previously submitted financial statement – Hasan F. Hashmi and Faraz F. Hashmi

**Annual Tax Returns.** As soon as available, but in no event later than 30 days after the applicable filing date for the tax reporting period, prepared by a CPA - Hasan F. Hashmi and Faraz F. Hashmi

**Financial Statements.** As soon as available, but in no event later than 45 days after the one year anniversary of previously submitted financial statement- Bowie Real Estate Holdings, LP

**Annual Tax Returns.** As soon as available, but in no event later than 30 days after the applicable filing date for the tax reporting period, prepared by a CPA - Bowie Real Estate Holdings, LP.

All financial reports required to be provided under this Agreement shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Borrower as being true and correct.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Additional Requirements.** Borrower must obtain approval from CFB prior to obtaining any additional loans or leases.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, and coverages reasonably acceptable to Lender and by insurance companies authorized to transact business in Texas. **BORROWER MAY FURNISH THE INSURANCE REQUIRED BY THIS AGREEMENT WHETHER THROUGH EXISTING POLICIES OWNED OR CONTROLLED BY BORROWER OR THROUGH EQUIVALENT COVERAGE FROM ANY INSURANCE COMPANY AUTHORIZED TO TRANSACT BUSINESS IN TEXAS.** Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an

# BUSINESS LOAN AGREEMENT

**Loan No: 3814-1**                                 **(Continued)**                                 **Page 3**

endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Guaranties.** Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantors named below, on Lender's forms, and in the amounts and under the conditions set forth in those guaranties.

| Names of Guarantors | Amounts |
|---|---|
| Bowie Real Estate Holdings LP | Unlimited |
| Hasan F. Hashmi | Unlimited |
| Faraz F. Hashmi | Unlimited |

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits. Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures paid by Lender for such purposes will then bear interest at the Note rate from the date paid by Lender to the date of repayment by Borrower. To the extent permitted by applicable law, all such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the

CFB 000003

# BUSINESS LOAN AGREEMENT
## (Continued)

**Loan No: 3814-1**        **Page 4**

prior written consent of Lender:

**Indebtedness and Liens.** (1) Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or (3) sell with recourse any of Borrower's accounts, except to Lender.

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or (3) make any distribution with respect to any capital account, whether by reduction of capital or otherwise.

**Loans, Acquisitions and Guaranties.** (1) Loan, invest in or advance money or assets to any other person, enterprise or entity, (2) purchase, create or acquire any interest in any other enterprise or entity, or (3) incur any obligation as surety or guarantor other than in the ordinary course of business.

**Agreements.** Enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender; or (E) Lender in good faith deems itself insecure, even though no Event of Default shall have occurred.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution or termination of Borrower's existence as a going business or the death of any partner, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Events Affecting General Partner of Borrower.** Any of the preceding events occurs with respect to any general partner of Borrower or any general partner dies or becomes incompetent.

**Change in Ownership.** The resignation or expulsion of any general partner with an ownership interest of twenty-five percent (25%) or more in Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing

CFB 000004

**BUSINESS LOAN AGREEMENT**
**(Continued)**

and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Governing Law. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Texas.**

**Choice of Venue.** If there is a lawsuit, and if the transaction evidenced by this Agreement occurred in Dallas County, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Dallas County, State of Texas.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Payment of Interest and Fees.** Notwithstanding any other provision of this Agreement or any provision of any Related Document, Borrower does not agree or intend to pay, and Lender does not agree or intend to charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for the Loan which would in any way or event (including demand, prepayment, or acceleration) cause Lender to contract for, charge or collect more for the Loan than the maximum Lender would be permitted to charge or collect by any applicable federal or Texas state law. Any such excess interest or unauthorized fee will, instead of anything stated to the contrary, be applied first to reduce the unpaid principal balance of the Loan, and when the principal has been paid in full, be refunded to Borrower.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Subsidiaries and Affiliates of Borrower.** To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates. Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in extending Loan Advances, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the extension of Loan Advances and delivery to Lender of the Related Documents, shall be continuing in nature, shall be deemed made and redated by Borrower at the time each Loan Advance is made, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any

# BUSINESS LOAN AGREEMENT

party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.** The word "Borrower" means Central Hospital of Bowie LP and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means CrossFirst Bank, its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.** The word "Note" means the Note dated December 14, 2017 and executed by Central Hospital of Bowie LP in the principal amount of $2,500,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Permitted Liens.** The words "Permitted Liens" mean (1) liens and security interests securing Indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

CFB 000006

## BUSINESS LOAN AGREEMENT
### (Continued)

| Loan No: 3814-1 | | Page 7 |
|---|---|---|

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED DECEMBER 14, 2017.

BORROWER:

CENTRAL HOSPITAL OF BOWIE LP

CENTRAL HOSPITAL SYSTEMS LLC, General Partner of Central Hospital of Bowie LP

By: _____
Hasan F. Hashmi, Manager of Central Hospital Systems LLC

By: _____
Faraz F. Hashmi, Manager of Central Hospital Systems LLC

LENDER:

CROSSFIRST BANK

By: _____
Authorized Signer

LaserPro, Ver. 17.3.0.019  Copr. D+H USA Corporation 1997, 2017.  All Rights Reserved.  - TX  L:\OFI\LPL\C40.FC  TR-7922  PR-4

CFB 000007

# **EXHIBIT B**

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,500,000.00 | 12-14-2017 | 12-14-2019 | 3814-1 | 1G32 / 62 | | DCG | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Central Hospital of Bowie LP
5005 LBJ Freeway Ste. 1400
Dallas, TX 75224

**Lender:** CrossFirst Bank
Dallas Market
2021 McKinney Avenue
Suite 800
Dallas, TX 75201

**Principal Amount: $2,500,000.00** **Date of Note: December 14, 2017**

**PROMISE TO PAY. Central Hospital of Bowie LP ("Borrower") promises to pay to CrossFirst Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Million Five Hundred Thousand & 00/100 Dollars ($2,500,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance or maturity, whichever occurs first.**

**CHOICE OF USURY CEILING AND INTEREST RATE.** The interest rate on this Note has been implemented under the "Weekly Ceiling" as referred to in Sections 303.002 and 303.003 of the Texas Finance Code.

**PAYMENT. Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on December 14, 2019. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning January 14, 2018, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. All payments must be made in U.S. dollars and must be received by Lender consistent with any written payment instructions provided by Lender. If a payment is made consistent with Lender's payment instructions but received after 5:00 P.M. Central Time, Lender will credit Borrower's payment on the next business day. Notwithstanding any other provision of this Note, Lender will not charge interest on any undisbursed loan proceeds. No scheduled payment, whether of principal or interest or both, will be due unless sufficient loan funds have been disbursed by the scheduled payment date to justify the payment.**

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each Day. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 4.250% per annum.** Interest prior to maturity on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.500 percentage points over the Index, resulting in an initial rate of 5.750% per annum based on a year of 360 days. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. For purposes of this Note, the "maximum rate allowed by applicable law" means the greater of (A) the maximum rate of interest permitted under federal or other law applicable to the indebtedness evidenced by this Note, or (B) the "Weekly Ceiling" as referred to in Sections 303.002 and 303.003 of the Texas Finance Code.

**INTEREST CALCULATION METHOD. Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding, unless such calculation would result in a usurious rate, in which case interest shall be calculated on a per diem basis of a year of 365 or 366 days, as the case may be. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.**

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest and all other amounts, costs and expenses for which Borrower is responsible under this Note or any other agreement with Lender pertaining to this loan, and in no event will Borrower ever be required to pay any unearned interest. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: CrossFirst Bank, Dallas Market, 2021 McKinney Avenue, Suite 800, Dallas, TX 75201.**

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged **0.750% of the unpaid portion of the regularly scheduled payment.**

**POST MATURITY RATE.** The Post Maturity Rate on this Note is the lesser of (A) the maximum rate allowed by law or (B) the interest rate under this Note. Borrower will pay interest on all sums due after final maturity, whether by acceleration or otherwise, at that rate.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution or termination of Borrower's existence as a going business or the death of any partner, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan.

## PROMISSORY NOTE
**(Continued)**

Loan No: 3814-1                                                                Page 2

This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Events Affecting General Partner of Borrower.** Any of the preceding events occurs with respect to any general partner of Borrower or any general partner dies or becomes incompetent.

**Change In Ownership.** The resignation or expulsion of any general partner with an ownership interest of twenty-five percent (25%) or more in Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire indebtedness, including the unpaid principal balance under this Note, all accrued unpaid interest, and all other amounts, costs and expenses for which Borrower is responsible under this Note or any other agreement with Lender pertaining to this loan, immediately due, without notice, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire an attorney to help collect this Note if Borrower does not pay, and Borrower will pay Lender's reasonable attorneys' fees. Borrower also will pay Lender all other amounts Lender actually incurs as court costs, lawful fees for filing, recording, releasing to any public office any instrument securing this Note; the reasonable cost actually expended for repossessing, storing, preparing for sale, and selling any security; and fees for noting a lien on or transferring a certificate of title to any motor vehicle offered as security for this Note, or premiums or identifiable charges received in connection with the sale of authorized insurance.

**JURY WAIVER. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.**

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Texas.**

**CHOICE OF VENUE.** If there is a lawsuit, and if the transaction evidenced by this Note occurred in Dallas County, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Dallas County, State of Texas.

**DISHONORED CHECK CHARGE.** Borrower will pay a processing fee of $30.00 if any check given by Borrower to Lender as a payment on this loan is dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by a Commercial Security Agreement from Borrower to Lender dated December 14, 2017, covering All Business Assets, and all assignments, modifications, extensions, renewals, replacements, riders and substitutions thereof.

Deed of Trust and in the amount of $2,500,000.00 from Bowie Real Estate Holdings LP (grantor) to Lender dated December 14, 2017 covering Property, as further defined therein, located at 705 E. Greenwood Ave., Bowie, TX and all assignments, modifications, extensions, renewals, replacements, riders and substitutions thereof.

The Promissory Note is governed by a Business Loan Agreement between Borrower and Lender dated December 14, 2017.

**ADDITIONAL DOCUMENTS.**

Commercial Guaranty executed by Bowie Real Estate Holdings LP dated December 14, 2017
Commercial Guaranty executed by Hasan F. Hashmi dated December 14, 2017
Commercial Guaranty executed by Faraz F. Hashmi dated December 14, 2017.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note may be requested orally by Borrower or as provided in this paragraph. All oral requests shall be confirmed in writing on the day of the request. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: **Hasan F. Hashmi, Manager of Central Hospital Systems LLC, General Partner of Central Hospital of Bowie LP; and Faraz F. Hashmi, Manager of Central Hospital Systems LLC, General Partner of Central Hospital of Bowie LP.** Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. **This revolving line of credit shall not be subject to Ch. 346 of the Texas Finance Code.**

**GUARANTY.** As a material inducement to Lender making this loan to Borrower, Bowie Real Estate Holdings LP, Hasan F. Hashmi and Faraz F. Hashmi have executed a Guaranty Agreement of this Promissory Note.

**ORAL AGREEMENTS. ORAL** OR UNEXECUTED **AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE, REGARDLESS OF THE LEGAL THEORY UPON WHICH IT IS BASED THAT IS IN ANY WAY RELATED TO THE CREDIT AGREEMENT. TO PROTECT YOU (BORROWER(S)) AND US (CREDITOR) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.**

**UNLAWFUL INTERNET GAMBLING NOTICE .** Restricted transactions as defined in Federal Reserve Regulation GG are prohibited from being processed through this account or relationship. Restricted transactions generally include, but are not limited to, those in which credit, electronic funds transfers, checks, or drafts are knowingly accepted by gambling businesses in connection with the participation by others in unlawful internet gambling.

CFB 000009

## PROMISSORY NOTE
### (Continued)

| Loan No: 3814-1 | | Page 3 |
|---|---|---|

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Texas (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. The right to accelerate maturity of sums due under this Note does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and Lender does not intend to charge or collect any unearned interest in the event of acceleration. All sums paid or agreed to be paid to Lender for the use, forbearance or detention of sums due hereunder shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of the loan evidenced by this Note until payment in full so that the rate or amount of interest on account of the loan evidenced hereby does not exceed the applicable usury ceiling. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, notice of dishonor, notice of intent to accelerate the maturity of this Note, and notice of acceleration of the maturity of this Note. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party, partner, or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

CENTRAL HOSPITAL OF BOWIE LP

CENTRAL HOSPITAL SYSTEMS LLC, General Partner of Central Hospital of Bowie LP

By: _____

Hasan F. Hashmi, Manager of Central Hospital Systems LLC

By: _____

Faraz F. Hashmi, Manager of Central Hospital Systems LLC

LaserPro, Ver. 17.3.0.019  Copr. D+H USA Corporation 1997, 2017.  All Rights Reserved.  - TX  L:\CFRLP\LE20.FC  TR-7920  PR-4

CFB 000010

**<u>EXHIBIT C</u>**

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,500,000.00 | 12-14-2017 | 12-14-2019 | 3814-1 | 1G32 / 62 | | DCG | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Central Hospital of Bowie LP
5005 LBJ Freeway Ste. 1400
Dallas, TX 75224

**Lender:** CrossFirst Bank
Dallas Market
2021 McKinney Avenue
Suite 800
Dallas, TX 75201

**Guarantor:** Bowie Real Estate Holdings LP
705 E Greenwood Ave.
Bowie, TX 76230

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, Lender's reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation and Lender's written acknowledgment of receipt. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. **It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).**

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, **without notice or demand and without lessening or otherwise affecting Guarantor's liability under this Guaranty, from time to time:** (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or

**COMMERCIAL GUARANTY**

transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor waives all rights of Guarantor under Chapter 43 of the Texas Civil Practice and Remedies Code. Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

    **Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

    **Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay

## COMMERCIAL GUARANTY
**Loan No: 3814-1**        **(Continued)**        Page 3

someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions.**

**Choice of Venue.** If there is a lawsuit, and if the transaction evidenced by this Guaranty occurred in Dallas County, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Dallas County, State of Texas.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury. Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.**

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Central Hospital of Bowie LP and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation Bowie Real Estate Holdings LP, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means CrossFirst Bank, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

CFB 000013

**COMMERCIAL GUARANTY**

Loan No: 3814-1             **(Continued)**             Page 4

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED DECEMBER 14, 2017.

GUARANTOR:

BOWIE REAL ESTATE HOLDINGS LP

BOWIE REAL ESTATE HOLDINGS GP LLC, General Partner of Bowie Real Estate Holdings LP

By: _____       By: _____
    Hasan F. Hashmi, Manager of Bowie Real Estate          Faraz F. Hashmi, Manager of Bowie Real Estate
    Holdings GP LLC                        Holdings GP LLC

LaserPro, Ver. 17.3.0.019 Copr. D+H USA Corporation 1997, 2017. All Rights Reserved. - TX L:\CFI\LPL\E20.FC TR-7820 PR-4

CFB 000014

# EXHIBIT D

1705221

## DEED OF TRUST

~~WHEN RECORDED MAIL TO:~~
CrossFirst Bank
Attn: Loan Services
4707 W 135th Street
Leawood, KS 66224

SEND TAX NOTICES TO:
Bowie Real Estate Holdings LP
705 E Greenwood Ave.
Bowie, TX 76230

**Capital Title**
GF# T-17-329854-CM

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

**MAXIMUM LIEN.** The lien of this Deed of Trust shall not exceed at any one time $2,500,000.00.

**THIS DEED OF TRUST** is dated December 14, 2017, among Bowie Real Estate Holdings LP, a Texas limited partnership, whose address is 705 E Greenwood Ave., Bowie, TX 76230 ("Grantor"); CrossFirst Bank, whose address is Dallas Market, 2021 McKinney Avenue, Suite 800, Dallas, TX 75201 (referred to below sometimes as "Beneficiary"); and Amy Fauss, Chief Operating Officer, whose address is 2021 McKinney Avenue, Ste 800, Dallas, TX 75201 (referred to below as "Trustee").

**CONVEYANCE AND GRANT.** For valuable consideration, Grantor conveys to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; and all easements, rights of way, and appurtenances; all water and water rights; and all other rights, royalties, and profits relating to the real property, including without limitation such rights as Grantor may have in all minerals, oil, gas, geothermal and similar matters, **(the "Real Property") located in Montague County, State of Texas:**

See as more fully described in attached Exhibit A, which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

**The Real Property or its address is commonly known as 705 East Greenwood Ave, Bowie, TX 76230.**

**REVOLVING LINE OF CREDIT.** This Deed of Trust secures the Indebtedness including, without limitation, a revolving line of credit, which obligates Lender to make advances to Borrower so long as Borrower complies with all the terms of the Note.

Grantor hereby absolutely assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) this Deed of Trust is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Deed of Trust and to hypothecate the Property; (c) the provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**GRANTOR'S WAIVERS.** Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Borrower shall pay to Lender all Indebtedness secured by this Deed of Trust as it becomes due, and Borrower and Grantor shall perform all their respective obligations under the Note, this Deed of Trust, and the Related Documents.

**PURPOSE OF LOAN.** The Note in the amount of $2,500,000.00 represents, in part or in whole, cash or other financial accommodations advanced or committed by Lender to Borrower on December 14, 2017 at Grantor's request, of which Grantor hereby acknowledges receipt.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous

Return To:
Capital Title of Texas, LLC
5800 W. Plano Pkwy., #220
Plano. TX 75093

## DEED OF TRUST
### (Continued)

Page 2

Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent. This restriction will not apply to rights and easements (such as gas and oil) not owned by Grantor and of which Grantor has informed Lender in writing prior to Grantor's signing of this Deed of Trust.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Texas law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and Lender's reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor

# DEED OF TRUST
## (Continued)

can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a fair value basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender, with losses made payable to Lender. GRANTOR MAY FURNISH THE REQUIRED INSURANCE WHETHER THROUGH EXISTING POLICIES OWNED OR CONTROLLED BY GRANTOR OR THROUGH EQUIVALENT INSURANCE FROM ANY INSURANCE COMPANY AUTHORIZED TO TRANSACT BUSINESS IN THE STATE OF TEXAS. If Grantor fails to provide any required insurance or fails to continue such insurance in force, Lender may, but shall not be required to, do so at Grantor's expense, and the cost of the insurance will be added to the Indebtedness. If any such insurance is procured by Lender, Grantor will be so notified, and Grantor will have the option of furnishing equivalent insurance through any insurer authorized to transact business in Texas. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures paid by Lender for such purposes will then bear interest at the Note rate from the date paid by Lender to the date of repayment by Grantor. To the extent permitted by applicable law, all such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**CONDEMNATION, JUDGMENTS AND AWARDS.** The following provisions relating to condemnation proceedings, judgments, decrees and awards for injury to the Property are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but

## DEED OF TRUST
### (Continued)

Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** To the extent permitted by applicable law, all judgments, decrees and awards for injury or damage to the Property, or any part of the Property, and awards pursuant to proceedings for condemnation of the Property, are hereby absolutely assigned to Lender, and if all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award, judgment or decree shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower and Grantor pay all the Indebtedness when due, and Grantor otherwise performs all the obligations imposed upon Grantor under this Deed of Trust, Lender shall execute and deliver to Grantor a release of this Deed of Trust lien and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. However, it is agreed that the payment of all the Indebtedness and performance of such obligations shall not terminate this Deed of Trust unless the liens and interests created hereby are released by Lender by a proper recordable instrument. Any filing fees required by law shall be paid by Grantor, if permitted by applicable law.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Grantor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution or termination of Borrower's or Grantor's existence as a going business or the death of any partner, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However,

# DEED OF TRUST
## (Continued)

this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Accelerate Indebtedness.** Lender may declare the unpaid principal balance of the Indebtedness due and payable. In no event will Borrower or Grantor be required to pay any unearned interest.

**Foreclosure.** If Lender invokes the power of sale, Trustee, at the request of Lender, may sell all or any portion of the Property at public auction to the highest bidder for cash at the location within the courthouse designated by the County Commissioners Court, or if no such area has been designated, at the area designated in the notice of sale within the courthouse, between the hours of 10:00 A.M. and 4:00 P.M. on the first Tuesday of any month, after the Trustee or its agent has given notice of the time and place of sale and of the property to be sold as required by the Texas Property Code, as then amended.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** As additional security for the payment of the Indebtedness, Grantor hereby assigns to Lender all Rents as defined in the Definitions section of this Deed of Trust. Lender shall have the right at any time, and even though no Event of Default shall have occurred under this Deed of Trust, to collect and receive the Rents. Lender shall provide any notice required by applicable law with regard to such enforcement of its right to collect and receive the Rents. In addition, if the Property is vacant, Lender may rent or lease the Property. Lender shall not be liable for its failure to rent the Property, to collect any Rents, or to exercise diligence in any matter relating to the Rents; Lender shall be accountable only for Rents actually received. Lender neither has nor assumes any obligation as lessor or landlord with respect to any occupant of the Property. Rents so received shall be applied by Lender first to the remaining unpaid balance of the Indebtedness, in such order or manner as Lender shall elect, and the residue, if any, shall be paid to the person or persons legally entitled to the residue.

**Trustee's Powers.** Grantor hereby jointly and severally authorizes and empowers Trustee to sell all or any portion of the Property together or in lots or parcels, as Trustee may deem expedient, and to execute and deliver to the purchaser or purchasers of such Property good and sufficient deeds of conveyance of fee simple title, or of lesser estates, and bills of sale and assignments, with covenants of general warranty made on Grantor's behalf. In no event shall Trustee be required to exhibit, present or display at any such sale any of the Property to be sold at such sale. The Trustee making such sale shall receive the proceeds of the sale and shall apply the same as provided below. Payment of the purchase price to Trustee shall satisfy the liability of the purchaser at any such sale of the Property, and such person shall not be bound to look after the application of the proceeds.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Borrower or Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, (2) vacate the Property immediately upon the demand of Lender, or (3) if such tenants refuse to surrender possession of the Property upon demand, the purchaser shall be entitled to institute and maintain the statutory action of forcible entry and detainer and procure a writ of possession thereunder, and Grantor expressly waives all damages sustained by reason thereof.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property. Trustee may convey all or any part of the Property to the highest bidder for cash with a general warranty binding Grantor, subject to prior liens and to other exceptions to conveyance and warranty. Grantor waives all requirements of appraisement, if any. The affidavit of any person having knowledge of the facts to the effect that proper notice as required by the Texas Property Code was given shall be prima facie evidence of the fact that such notice was in fact given. Recitals and statements of fact in any notice or in any conveyance to the purchaser or purchasers of the Property in any foreclosure sale under this Deed of Trust shall be prima facie evidence of the truth of such facts, and all prerequisites and requirements necessary to the validity of any such sale shall be presumed to have been performed. Any sale under the powers granted by this Deed of Trust shall be a perpetual bar against Grantor, Grantor's heirs, successors, assigns and legal representatives.

## DEED OF TRUST
### (Continued)

**Proceeds.** Trustee shall pay the proceeds of any sale of the Property (a) first, to the expenses of foreclosure, including reasonable fees or charges paid to the Trustee, including but not limited to fees for enforcing the lien, posting for sale, selling, or releasing the Property, (b) then to Lender the full amount of the Indebtedness, (c) then to any amount required by law to be paid before payment to Grantor, and (d) the balance, if any, to Grantor.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as Lender's attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law. In the event of foreclosure of this Deed of Trust, Lender shall be entitled to recover from Borrower or Grantor Lender's reasonable attorneys' fees and actual disbursements that Lender necessarily incurs in pursuing such foreclosure.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other lienholder of the Property of the commencement of a foreclosure proceeding or of the commencement of any other action to which Lender may avail itself as a remedy, except to the extent required by applicable law or by written agreement.

**Trustee.** In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Substitute Trustee.** Lender, at Lender's option, from time to time, and more than once, may appoint in writing a successor or substitute trustee, with or without cause, including the resignation, absence, death, inability, refusal or failure to act of the Trustee. The successor or substitute trustee may be appointed without ever requiring the resignation of the former trustee and without any formality except for the execution and acknowledgment of the appointment by the beneficiary of this Deed of Trust. The successor or substitute trustee shall then succeed to all rights, obligations, and duties of the Trustee. This appointment may be made on Lender's behalf by the President, any Vice President, Secretary, or Cashier of Lender.

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of Texas.

**Choice of Venue.** If there is a lawsuit, and if the transaction evidenced by this Deed of Trust occurred in Dallas County, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Dallas County, State of Texas.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Deed of Trust shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Grantor signing below is responsible for all obligations in this Deed of Trust. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Deed of Trust.

CFB 000020

**DEED OF TRUST**
**(Continued)**

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Payment of Interest and Fees.** Notwithstanding any other provision of this Deed of Trust or any provision of any Related Document, Grantor does not agree or intend to pay, and Lender does not agree or intend to charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for the Indebtedness which would in any way or event (including demand, prepayment, or acceleration) cause Lender to contract for, charge or collect more for the Indebtedness than the maximum Lender would be permitted to charge or collect by any applicable federal or Texas state law. Any such excess interest or unauthorized fee will, instead of anything stated to the contrary, be applied first to reduce the unpaid principal balance of the Indebtedness, and when the principal has been paid in full, be refunded to Grantor.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury. All parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means CrossFirst Bank, and its successors and assigns.

**Borrower.** The word "Borrower" means Central Hospital of Bowie LP and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Grantor.** The word "Grantor" means Bowie Real Estate Holdings LP.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means CrossFirst Bank, its successors and assigns.

CFB 000021

## DEED OF TRUST
### (Continued)

<div align="right">Page 8</div>

**Note.** The word "Note" means the promissory note dated December 14, 2017, **in the original principal amount of $2,500,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO GRANTOR:  THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property. The word "Rents" shall also mean all "Rents" as defined in Chapter 64 of the Texas Property Code.

**Trustee.** The word "Trustee" means Amy Fauss, Chief Operating Officer, whose address is 2021 McKinney Avenue, Ste 800, Dallas, TX 75201 and any substitute or successor trustees.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND GRANTOR AGREES TO ITS TERMS.**

**GRANTOR:**

**BOWIE REAL ESTATE HOLDINGS LP**

**BOWIE REAL ESTATE HOLDINGS GP LLC, General Partner of Bowie Real Estate Holdings LP**

By: _____            By: _____
    **Hasan F. Hashmi, Manager of Bowie Real Estate**          **Faraz F. Hashmi, Manager of Bowie Real Estate**
    **Holdings GP LLC**                                          **Holdings GP LLC**

---

## PARTNERSHIP ACKNOWLEDGMENT

STATE OF _____Texas_____ )
                           ) SS
COUNTY OF _____Collin_____ )

This instrument was acknowledged before me on ____December 14____, 20_17_ by Hasan F. Hashmi, Manager of Bowie Real Estate Holdings GP LLC, General Partner of Bowie Real Estate Holdings LP and Faraz F. Hashmi, Manager of Bowie Real Estate Holdings GP LLC, General Partner of Bowie Real Estate Holdings LP, partners on behalf of Bowie Real Estate Holdings LP, a partnership.

CHRIS MITCHELL
Notary Public
State of Texas
ID # 124191141
My Comm. Expires 07-11-2018

_____
Notary Public, State of Texas

LaserPro, Ver. 17.3.0.019  Copr. D+H USA Corporation 1997, 2017.   All Rights Reserved.   - TX  L:\CFI\LPL\G01.FC  TR-7920  PR-4

Escrow File No.: T-17-329854-CM

## EXHIBIT "A"

A 4.93 acre tract of land being all of Block 3 of the Presley Subdivision to the City of Bowie, Montague County, Texas according to the plat of same recorded in Volume 519, Page 602, Deed Records, Montague County, Texas and being all of Lot 2 and Lot 3 Block 2, the southwest 85.00 feet of Lot 2 and all of Lot 3 and Lot 4 Block 3 of the Weldon Clark Subdivision to the City of Bowie, Montague County, Texas according to the plat of same recorded in Volume 498, Page 313, Deed Records, Montague County, Texas and being the same tract of land described as tract one, two and three in deed to Bowie Real Estate Holdings, LP recorded in File No. 10602222, Official Public Records, Montague County, Texas and being more particularly described as follows:

BEGINNING at a one inch iron pipe found in the northeast line of Greenwood Street and in the southeast line of Lamb Street for the west corner of said Block 3 Presley Subdivision and the west corner of said Bowie Real Estate Holdings tract one;

THENCE North 45°13 '46" East with the southeast line of said Lamb Street 98.40 feet to a "Y" cut on concrete for the beginning of a 328.56 foot radius curve, the center of circle of said curve bears North 44°28'47" West;

THENCE Northeasterly along said curve through a central angle of 30°09' 19" for an arc length of 172.92 feet to an iron rod found for corner;

THENCE North 15°44' 14" East with the southeast line of said Lamb Street 18.00 feet to an iron rod found for the beginning of a 268.56 foot radius curve, the center of circle of said curve bears South 74°15'45" East;

THENCE Northeasterly along said curve through a central angle of 29°55'27" for an arc length of 140.26 feet to a "Y" cut on concrete for the north corner of said Block 3 Presley Subdivision;

THENCE North 45°13'46" East with the southeast line of said Lamb Street 30.00 feet to an iron rod set for the west corner of said Lot 2 Block 2 Weldon Clark Subdivision and for the west corner of said Bowie Real Estate Holdings tract two;

THENCE North 45°06' 15" East with the southeast line of said Lamb Street 95.00 feet to an iron rod found for the west corner of Lot 1 and for the north corner of said Lot 2 Block 2 Weldon Clark Subdivision and for the north corner of said Bowie Real Estate Holdings tract two;

THENCE South 44°45'44" East 224.67 feet to an iron rod found in the northwest line of Rock Street for the south corner of Lot 4 and for the east corner of said Lot 3 Block 2 Weldon Clark Subdivision and for the east corner of said Bowie Real Estate Holdings tract two;

CFB 000023

THENCE South 45°06' 15" West with the northwest line of said Rock Street 94.97 feet to a point in a building and in the northeast line of a platted alley for the south corner of said Lot 3 Block 2 and for the south corner of said Bowie Real Estate Holdings tract two;

THENCE South 44°46' 18" East 49.85 feet with the northeast line of said platted alley 49.85 feet to an iron rod set for the west corner of said Lot 2 Block 3 Weldon Clark Subdivision and for the west corner of said Bowie Real Estate Holdings tract three;

THENCE North 45°24' 18" East with the southeast line of said Rock Street and the northwest line of said Lot 2 Block 3 a distance of 84.13 feet to an iron rod found for the most westerly north corner of said Bowie Real Estate Holdings tract three;

THENCE South 44°35'36" East 112.27 feet to an iron rod fom;id in the southeast line of said Lot 2 and in the northwest line of said Lot 3 Block 3 Weldon Clark Subdivision for an inner corner of said Bowie Real Estate Holdings tract three;

THENCE North 45°14'29" East 105.88 feet to an iron rod found in the southwest line of Gray Street for the east corner of Lot 1 and for the north corner of said Lot 4 Block 3 Weldon Clark Subdivision and for the most northerly north corner of said Bowie Real Estate Holdings tract three;

THENCE South 44 °03 '57" East with the southwest line of said Gray Street 112.50 feet to a "Y" cut in a gutter in the northwest line of said Rock Street for the east corner, of said Lot 4 Block 3 Weldon Clark Subdivision for the east corner of said Bowie Real Estate Holdings tract three;

THENCE South 45°24' 18" West with the northwest line of said Rock Street 188.28 feet to a "PK" nail set in the northeast line of said platted alley for the south corner of said Lot 3 Block 3 Weldon Clark Subdivision and for the south corner of said Bowie Real Estate Holdings tract three;

THENCE North 44°46' 13" West 19.93 feet to a "Y" cut on concrete for corner;

THENCE South 45°13'43" West 20.21 feetto a "Y" cut on concrete for the beginning of a 268.56 foot radius curve, the center of circle of said curve bears North 44°46' 15" West and for the east corner of said Block 3 Presley Subdivision and for the east corner of said Bowie Real Estate Holdings tract one;

THENCE Southwesterly along said curve through a central angle of 30°08'24" for an arc length of 141.27 feet to a "Y" cut on concrete for corner;

THENCE South 75°22'08" West with the northwest line of said Rock Street 42.00 feet to an iron rod found for the beginning of a 328.56 foot radius curve, the center of circle of said curve bears South 14°37'51" East;

THENCE Southwesterly along said curve through a central angle of 29°59'29" for an arc length of 171.98 feet to an iron rod found for corner;

THENCE South 45°13 '46" West with the northwest line of said Rock Street 88.08 feet to an iron rod found in the northeast line of said Greenwood Street for the south corner of said Block 3 Presley Subdivision and for the south corner of said Bowie Real Estate Holdings tract one;

THENCE North 44°46' 15" West with the northeast line of said Greenwood Street 289.95 feet to the POINT OF BEGINNING.

FILED FOR RECORD
GLENDA HENSON - COUNTY CLERK
MONTAGUE COUNTY, TEXAS

## INST NO: 1705221

FILED ON: DECEMBER 20, 2017 AT 03:28pm

THIS INSTRUMENT CONTAINED 12 PAGES AT FILING



THE STATE OF TEXAS COUNTY OF MONTAGUE
I hereby certify that this instrument was filed on the date
and time stamped hereon and recorded in the
instrument of named record of Montague County, and
stamped hereon by me.
DATE: DECEMBER 20, 2017
GLENDA HENSON, COUNTY CLERK

Instrument # **1705221** , 12 Pages

OPR RECORDS

CFB 000026

**<u>EXHIBIT E</u>**



February 28, 2020

Dr. Hasan Hashmi & Mr. Faraz Hashmi
Central Hospital of Bowie, LP / Bowie Real Estate Holdings, GP, LLC
5937 Gladeside Ct.
Dallas, TX 75248

RE: CrossFirst Bank – Loan Payments past due / items needed - Loan #3814-1

Gentlemen;

Your loan is in default for the following reasons;

- Montague County real estate tax payments past due (2018 and 2019 tax payments past due as of Feb 2020)
- Lack of continuing operations for supportable cash flow to service the debt
- Interest payments past due as of December 14, 2020

As you know, we have contracted with Mark Shapiro of Glass Ratner for consultation to help with your February 4 verbal commitment to prioritize the repayment of Loan #3814-1.

Please continue to correspond with him and submit requested items in a timely and detailed manner, including but not limited to;

- Detailed and A/R Aging Reports that include all (but not limited to) the following items;

  1. Claim #
  2. Date of Service
  3. Patient Name
  4. CPT/HCPCS/Rev Code
  5. Quantity
  6. Modifiers
  7. Diagnosis Codes
  8. Rendering Provider Name/NPI
  9. Billing Provider Name/NPI
  10. Tax ID
  11. Amount Billed
  12. Date(s) billed
  13. Payments (if any)
  14. Payor (Medicare, Medicaid, Managed Medicare, Managed Medicaid, Commercial, Managed Care (HMO/PPO) Self Pay) 3. CPT code (s) 4. Denial code (s) (I've attached the standard reason and remark codes)
  15. Denials (including glossary of denial reason codes)
  16. Account notes

Also, please continue to update me on the progress of these requests and let me know if you have questions throughout the process.

Thanks

Dustin Gibson, CrossFirst Bank

# EXHIBIT F

March 4, 2020

**NOTICE OF DEFAULT AND**
**RESERVATION OF RIGHTS**

**SENT BY CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED**
**AND A COPY BY FIRST CLASS MAIL**

Central Hospital of Bowie LP
5005 LBJ Freeway, Suite 1400
Dallas, Texas 75224

Bowie Real Estate Holdings LP
705 E. Greenwood Ave.
Bowie, Texas 76230

Faraz F. Hashmi
5937 Gladeside Ct.
Dallas, Texas 75248

Hasan F. Hashmi
5937 Gladeside Ct.
Dallas, Texas 75248

RE:    That certain loan in the original principal amount of $2,500,000.00 (the "Loan")
       evidenced by that certain Business Loan Agreement dated December 14, 2017 (as so
       amended and assigned, from time to time, the "Loan Agreement" and all amounts due
       thereunder, the "Indebtedness"), made by Central Hospital of Bowie LP ("Borrower"),
       CrossFirst Bank ("Lender"), as evidenced by that certain Promissory Note dated
       December 14, 2017, executed by Borrower and payable to the order of Lender, secured
       by, among other things, that certain Commercial Security Agreement dated December
       14, 2017, executed by Borrower for the benefit of Lender, covering the property more
       particularly described therein (collectively, the "Property").

       The Loan Agreement, Note, the Security Agreement, the Guaranty (as defined below)
       and the Deed of Trust (as defined below), along with any other documents evidencing or
       securing the Loan are collectively referred to herein as the "Loan Documents"). Any
       capitalized term used in this letter but not defined herein shall have the meaning
       assigned to such term in the Loan Agreement.



March 4, 2020
Page 2

Ladies and Gentlemen:

According to Lender's records, Borrower is in default under the Loan because of, and among other things:

(i) Borrower's failure to repay the Loan in full on the Maturity Date; and

(ii)   failure to pay all taxes prior to the due date thereof pursuant to the Loan Agreement.

Items (i)-(ii) above are collectively referred to herein as the "Events of Default".

The Loan is secured by, among other things (i) that certain Commercial Guaranty dated December 14, 2017, executed by Faraz F. Hashmi ("Faraz"), (ii) that certain Commercial Guaranty dated December 14, 2017, executed by Hasan F. Hashmi ("Hasan"), and (iii) that certain Commercial Guaranty dated December 14, 2017, executed by Bowie Real Estate Holdings LP ("Bowie"; together with Faraz and Hasan, individually and collectively, "Guarantors"), which is secured by that certain Deed of Trust dated December 14, 2017 (the "Deed of Trust"), executed by Bowie to Amy Fauss, as trustee for the benefit of Lender, recorded in the Real Property Records of Montague County, Texas, as Instrument No. 1705221, covering the property more particularly described therein (the "Collateral Property").

Demand is hereby made on Borrower and each Guarantor for prompt payment and performance of Borrower's obligations related to the Events of Default under the Loan Documents.

This letter serves to notify Borrower that Lender hereby expressly reserves all of its rights, remedies and recourses with respect to the Loan at any time, including initiating foreclosure proceedings against the Property and the Collateral Property. In the event suit is filed by Lender to collect the Loan, Lender will seek, in addition to other damages, recovery of attorneys' fees as allowed by law.  Neither this letter nor any action or inaction by Lender, whether past, present or future, has been intended or shall be construed to (i) constitute a waiver of any Event of Default now existing or hereafter arising or a waiver of compliance with any term or provision in the Loan Agreement or other Loan Documents, or an agreement to delay or forbear from the exercise of, any of any rights and remedies provided for at law and/or in the Loan Documents or otherwise, (ii) constitute a waiver of any rights, claims and/or remedies under the Loan Documents and/or applicable law, (iii) constitute a course of dealing among the parties, (iv) constitute an election of remedies, (v) constitute an agreement to engage in negotiation of, or to obtain internal approval for, any proposal for a forbearance or a restructure of the Loan, or (vi) constitute an agreement with respect to any other matter not expressly and specifically set forth herein.  This letter and any notice or notices previously sent by Lender should not be construed as requiring Lender to give any notice not expressly required by the Loan Documents or applicable law.

All rights and remedies available to Lender under the Loan Agreement, the Note, the Deed of Trust, and the other Loan Documents, and applicable law may be exercised concurrently and successively, and Lender reserves all rights to exercise its remedies in such order and manner as it may elect, to the maximum extent permitted by applicable law.

As a result of the Events of Default, Lender has retained outside legal counsel and is continuing to accrue legal fees in connection with the Loan.  Pursuant to the terms of the Loan Documents, Borrower will be

March 4, 2020
Page 3

responsible for payment of all fees and expenses (including fees of Lender's legal counsel) incurred in connection with the Loan.

One purpose of this letter is to collect a debt and any information obtained will be used for that purpose. This letter is not intended to advise you of your legal rights and obligations. We recommend that you obtain counsel of your choice to protect your interests.

CROSSFIRST BANK

By: _____
Name: _DAVID WILLIAMS_
Title: _PRESIDENT, DALLAS_

March 4, 2020

**NOTICE OF DEFAULT AND**
**RESERVATION OF RIGHTS**

**SENT BY CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED**
**AND A COPY BY FIRST CLASS MAIL**

Central Hospital of Bowie LP
5005 LBJ Freeway, Suite 1400
Dallas, Texas 75224

Bowie Real Estate Holdings LP
705 E. Greenwood Ave.
Bowie, Texas 76230

Faraz F. Hashmi
5937 Gladeside Ct.
Dallas, Texas 75248

Hasan F. Hashmi
5937 Gladeside Ct.
Dallas, Texas 75248

RE:    That certain loan in the original principal amount of $2,500,000.00 (the "Loan")
evidenced by that certain Business Loan Agreement dated December 14, 2017 (as so
amended and assigned, from time to time, the "Loan Agreement" and all amounts due
thereunder, the "Indebtedness"), made by Central Hospital of Bowie LP ("Borrower"),
CrossFirst Bank ("Lender"), as evidenced by that certain Promissory Note dated
December 14, 2017, executed by Borrower and payable to the order of Lender, secured
by, among other things, that certain Commercial Security Agreement dated December
14, 2017, executed by Borrower for the benefit of Lender, covering the property more
particularly described therein (collectively, the "Property").

The Loan Agreement, Note, the Security Agreement, the Guaranty (as defined below)
and the Deed of Trust (as defined below), along with any other documents evidencing or
securing the Loan are collectively referred to herein as the "Loan Documents". Any
capitalized term used in this letter but not defined herein shall have the meaning
assigned to such term in the Loan Agreement.



March 4, 2020
Page 2

Ladies and Gentlemen:

According to Lender's records, Borrower is in default under the Loan because of, and among other things:

(i) Borrower's failure to repay the Loan in full on the Maturity Date; and

(ii) failure to pay all taxes prior to the due date thereof pursuant to the Loan Agreement.

Items (i)-(ii) above are collectively referred to herein as the "Events of Default".

The Loan is secured by, among other things (i) that certain Commercial Guaranty dated December 14, 2017, executed by Faraz F. Hashmi ("Faraz"), (ii) that certain Commercial Guaranty dated December 14, 2017, executed by Hasan F. Hashmi ("Hasan"), and (iii) that certain Commercial Guaranty dated December 14, 2017, executed by Bowie Real Estate Holdings LP ("Bowie"; together with Faraz and Hasan, individually and collectively, "Guarantors"), which is secured by that certain Deed of Trust dated December 14, 2017 (the "Deed of Trust"), executed by Bowie to Amy Fauss, as trustee for the benefit of Lender, recorded in the Real Property Records of Montague County, Texas, as Instrument No. 1705221, covering the property more particularly described therein (the "Collateral Property").

Demand is hereby made on Borrower and each Guarantor for prompt payment and performance of Borrower's obligations related to the Events of Default under the Loan Documents.

This letter serves to notify Borrower that Lender hereby expressly reserves all of its rights, remedies and recourses with respect to the Loan at any time, including initiating foreclosure proceedings against the Property and the Collateral Property. In the event suit is filed by Lender to collect the Loan, Lender will seek, in addition to other damages, recovery of attorneys' fees as allowed by law. Neither this letter nor any action or inaction by Lender, whether past, present or future, has been intended or shall be construed to (i) constitute a waiver of any Event of Default now existing or hereafter arising or a waiver of compliance with any term or provision in the Loan Agreement or other Loan Documents, or an agreement to delay or forbear from the exercise of, any of any rights and remedies provided for at law and/or in the Loan Documents or otherwise, (ii) constitute a waiver of any rights, claims and/or remedies under the Loan Documents and/or applicable law, (iii) constitute a course of dealing among the parties, (iv) constitute an election of remedies, (v) constitute an agreement to engage in negotiation of, or to obtain internal approval for, any proposal for a forbearance or a restructure of the Loan, or (vi) constitute an agreement with respect to any other matter not expressly and specifically set forth herein. This letter and any notice or notices previously sent by Lender should not be construed as requiring Lender to give any notice not expressly required by the Loan Documents or applicable law.

All rights and remedies available to Lender under the Loan Agreement, the Note, the Deed of Trust, and the other Loan Documents, and applicable law may be exercised concurrently and successively, and Lender reserves all rights to exercise its remedies in such order and manner as it may elect, to the maximum extent permitted by applicable law.

As a result of the Events of Default, Lender has retained outside legal counsel and is continuing to accrue legal fees in connection with the Loan. Pursuant to the terms of the Loan Documents, Borrower will be

March 4, 2020
Page 3

responsible for payment of all fees and expenses (including fees of Lender's legal counsel) incurred in connection with the Loan.

One purpose of this letter is to collect a debt and any information obtained will be used for that purpose. This letter is not intended to advise you of your legal rights and obligations. We recommend that you obtain counsel of your choice to protect your interests.

CROSSFIRST BANK

By: _____

Name: _DAVID WILLIAMS_

Title: _PRESIDENT, DALLAS_

**<u>EXHIBIT G</u>**



March 13, 2020

**SECOND NOTICE OF DEFAULT
AND DEMAND FOR PAYMENT**

**SENT BY CERTIFIED MAIL,
RETURN RECEIPT REQUESTED
AND A COPY BY FIRST CLASS MAIL
AND A COPY BY ELECTRONIC MAIL**

Central Hospital of Bowie LP
5005 LBJ Freeway, Suite 1400
Dallas, Texas 75224
haroon@hlg-law.com

Certified Article Number
9414 7266 9904 2132 1808 77
SENDER'S RECORD

Bowie Real Estate Holdings LP
705 E. Greenwood Ave.
Bowie, Texas 76230
haroon@hlg-law.com

Certified Article Number
9414 7266 9904 2132 1808 84
SENDER'S RECORD

Faraz F. Hashmi
5937 Gladeside Ct.
Dallas, Texas 75248
thashmi1@gmail.com

Certified Article Number
9414 7266 9904 2132 1808 91
SENDER'S RECORD

Hasan F. Hashmi
5937 Gladeside Ct.
Dallas, Texas 75248
hfhashmi@gmail.com

Certified Article Number
9414 7266 9904 2132 1809 07
SENDER'S RECORD

RE: That certain loan in the original principal amount of $2,500,000.00 (the "Loan")
evidenced by that certain Business Loan Agreement dated December 14, 2017 (as so
amended and assigned, from time to time, the "Loan Agreement" and all amounts due
thereunder, the "Indebtedness"), made by Central Hospital of Bowie LP ("Borrower"),
CrossFirst Bank ("Lender"), as evidenced by that certain Promissory Note dated
December 14, 2017 (the "Note"), executed by Borrower and payable to the order of
Lender, secured by, among other things, that certain Commercial Security Agreement
dated December 14, 2017, executed by Borrower for the benefit of Lender, covering the
property more particularly described therein (collectively, the "Property").

The Loan Agreement, Note, the Security Agreement, the Guaranty (as defined below)
and the Deed of Trust (as defined below), along with any other documents evidencing or
securing the Loan are collectively referred to herein as the "Loan Documents". Any

March 13, 2020
Page 2

capitalized term used in this letter but not defined herein shall have the meaning assigned to such term in the Loan Agreement.

Ladies and Gentlemen:

This law firm represents Lender in connection with the Loan. This letter concerns the occurrence of certain Events of Default under the Loan, including, but not limited to, Borrower's failure to repay the Loan on the Maturity Date (collectively, the "Events of Default"). Lender previously notified Borrower and Guarantor of the Events of Default pursuant to that certain Notice of Default letter dated March 4, 2020.

The Loan is secured by, among other things (i) that certain Commercial Guaranty dated December 14, 2017, executed by Faraz F. Hashmi ("Faraz"), (ii) that certain Commercial Guaranty dated December 14, 2017, executed by Hasan F. Hashmi ("Hasan"), and (iii) that certain Commercial Guaranty dated December 14, 2017, executed by Bowie Real Estate Holdings LP ("Bowie"; together with Faraz and Hasan, individually and collectively, "Guarantors"), which is secured by that certain Deed of Trust dated December 14, 2017 (the "Deed of Trust"), executed by Bowie to Amy Fauss, as trustee for the benefit of Lender, recorded in the Real Property Records of Montague County, Texas, as Instrument No. 1705221, covering the property more particularly described therein (the "Collateral Property").

Despite being under no obligation to do so, demand is hereby made for the immediate payment of all amounts outstanding under the Loan Documents, before 12:00 p.m., Central Time, on March 16, 2020. Payment must be made with cash or other form of payment acceptable to Lender. You should contact David Williams at Lender's offices at telephone number (214) 545-6054 for the exact amounts owed and to make arrangements for the payment of the outstanding amounts under the Loan Documents.

This letter is formal notice that if Borrower fails to repay the Loan in full by 12:00 p.m. Central time on March 16, 2020, Lender intends to commence foreclosure proceedings against the Collateral Property and exercise the other rights and remedies available to Lender under the Loan Documents.

All rights and remedies available to Lender under the Loan Agreement, Note, Deed of Trust, any Loan Document, and applicable law may be exercised concurrently and successively, and Lender reserves all rights to exercise its remedies in such order and manner as it may elect, to the maximum extent permitted by applicable law. Lender's past or future delay in exercising or failure to exercise any rights and remedies available to Lender is not intended to be and should not be construed as (i) a waiver of rights and remedies available to Lender pursuant to the Loan Documents, or (ii) an agreement by Lender to forbear from exercising its rights and remedies in the future.

Further, by this letter, Lender expressly reserves all of its rights and remedies with respect to the Loan Agreement, Note, Deed of Trust, and the Loan Documents executed in conjunction therewith. Neither this letter nor any action or inaction by Lender, whether past, present or future, has been intended or shall be construed as (a) a waiver of, or an agreement to delay or forbear from the exercise of, any rights or remedies provided for at law or in the Loan Documents or otherwise; (b) a waiver of any defaults under the Loan Agreement, Note, Deed of Trust, or any other Loan Document; (c) an election of remedies; (d) an agreement to engage in negotiation of, or to obtain internal approval for, any proposal for a restructure or extension of the Loans; or (e) an agreement with respect to any other matter not expressly set forth in this letter. This letter and any notice or notices previously sent by Lender shall not be construed as

March 13. 2020
Page 3

requiring Lender to give any notice not expressly required by the Loan Agreement, Note, Deed of Trust, any other Loan Document, or by applicable law.

Lender's claims and demands with respect to this indebtedness, whenever made, whether for principal, interest, or otherwise, are intended to comply in all respects, both independently and collectively, with all applicable usury laws, and all such claims and demands are accordingly limited so that applicable laws are not violated.

No oral representations or course of dealing on the part of Lender, its officers, employees, or agents, nor any failure or delay by Lender with respect to the exercise of any right, power or privilege under the Loan Documents and all other agreements between Lender and Borrower shall operate as a waiver of any rights which Lender may have, and the single or partial exercise of any such right, power, or privilege shall not preclude any later exercise of any other right, power, or privilege provided in the Loan Documents.

One purpose of this letter is to collect a debt and any information obtained will be used for that purpose. This letter is not intended to advise you of your legal rights and obligations. We recommend that you obtain counsel of your choice to protect your interests.

JACKSON WALKER L.L.P.

By: _____
Michael S. Held

cc:     David Williams
        Lloyd Stone
        John Billings
        Dustin Gibson

**<u>EXHIBIT H</u>**



March 17, 2020

**NOTICE OF FORECLOSURE**

**SENT BY CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED**
**AND A COPY BY FIRST CLASS MAIL**

Central Hospital of Bowie LP
5005 LBJ Freeway, Suite 1400
Dallas, Texas 75224

Certified Article Number

9414 7266 9904 2151 8671 00

SENDER'S RECORD

Bowie Real Estate Holdings LP
705 E. Greenwood Ave.
Bowie, Texas 76230

Certified Article Number

9414 7266 9904 2151 8671 17

SENDER'S RECORD

Faraz F. Hashmi
5937 Gladeside Ct.
Dallas, Texas 75248

Certified Article Number

9414 7266 9904 2151 8671 24

SENDER'S RECORD

Hasan F. Hashmi
5937 Gladeside Ct.
Dallas, Texas 75248

Certified Article Number

9414 7266 9904 2151 8671 31

SENDER'S RECORD

RE: That certain loan in the original principal amount of $2,500,000.00 (the "Loan") evidenced by that certain Business Loan Agreement dated December 14, 2017 (as so amended and assigned, from time to time, the "Loan Agreement" and all amounts due thereunder, the "Indebtedness"), made by Central Hospital of Bowie LP ("Borrower"), and CrossFirst Bank ("Lender"), as evidenced by that certain Promissory Note dated December 14, 2017 (the "Note"), executed by Borrower and payable to the order of Lender, secured by, among other things, that certain Deed of Trust dated December 14, 2017 (the "Deed of Trust"), executed by Bowie Real Estate Holdings LP ("Bowie") to Amy Fauss, as trustee for the benefit of Lender, recorded in the Real Property Records of Montague County, Texas, as Instrument No. 1705221, covering the property more particularly described on Exhibit A attached hereto (the "Property").

Ladies and Gentlemen:

This law firm represents Lender. Lender is the current owner and holder of the Note which evidences the loan (the "Loan") to Borrower and is secured by, among other things, the Property pursuant to terms of the

Page 2

Deed of Trust. The Loan Agreement, the Note, Deed of Trust, and all other loan documents executed in connection with the Loan, are referred to herein, collectively, as the "Loan Documents".

Borrower is in default under the Loan because of, and among other things, failure to repay the Loan on the Maturity Date (as defined in the Loan Agreement) (the "Default"). By letter dated March 4, 2020, Lender notified you of the continuing nature of the Default and demanded the immediate payment in full of the Loan. By letter dated March 13, 2020, this firm notified Borrower of the continuing nature of the Default and gave Borrower and each Guarantor notice of Lender's intent to begin exercising remedies against Borrower and Guarantor, including commencing foreclosure proceedings against the Property in the event the Loan was not repaid in full on or before 12:00 p.m., Central Time, on March 16, 2020.

According to the records of Lender, Borrower has failed to cure the Default. Further demand is hereby made on Borrower and all persons obligated on the Note for the payment of the full outstanding principal balance of the Note, plus accrued interest and any other amounts owing under the Loan Agreement, the Note and Loan Documents. If Borrower wishes to satisfy the indebtedness to protect its interest in the Property, David Williams at Lender's offices at telephone number (214) 545-6054 should immediately be contacted to arrange for payment of the exact amounts owed on the date of the payment.

If the amounts owed are not paid, Lender will have the Property sold pursuant to the terms of the Deed of Trust. This sale shall be conducted as required by law and the Deed of Trust. A copy of the Notice of Substitute Trustee's Sale specifying the time, place, and terms of the foreclosure sale is enclosed with this letter. The proceeds from the sale shall be applied to the indebtedness in accordance with the terms of the Loan Documents. If the proceeds from the sale are insufficient to fully satisfy the debt, then to the extent allowable under applicable law and the Loan Documents, Lender may choose collect the deficiency, through suit or otherwise, including any attorneys' fees allowed by the court.

The Loan is further secured by, among other things (i) that certain Commercial Guaranty dated December 14, 2017, executed by Faraz F. Hashmi ("Faraz"), (ii) that certain Commercial Guaranty dated December 14, 2017, executed by Hasan F. Hashmi ("Hasan"), and (iii) that certain Commercial Guaranty dated December 14, 2017, executed by Bowie Real Estate Holdings LP ("Bowie"; together with Faraz and Hasan, individually and collectively, "Guarantors"). Demand is hereby made on Guarantors for prompt payment and performance of Borrower's obligations under the Loan.

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.** The address for the sender of this notice is c/o Jackson Walker L.L.P., 2323 Ross Ave., Suite 600, Dallas, Texas 75201, Attn: Kelly S. Hodge.

All rights and remedies available to Lender under the Loan Agreement, Note, Deed of Trust, and other Loan Documents, and applicable law may be exercised concurrently and successively, and Lender reserves all rights to exercise its remedies in such order and manner as it may elect, to the maximum extent permitted by applicable law.

Page 3

This letter also serves to notify Borrower and Guarantor that Lender hereby expressly reserves all of its rights, remedies and recourses with respect to the Loan, including its rights, remedies and recourses arising as a result of the Default. Neither this letter nor any action or inaction by Lender, whether past, present or future, any discussions or correspondence between Borrower and/or Guarantor and Lender, has been intended or shall be construed as (a) a waiver of, or an agreement to delay or forbear from the exercise of, any of Lender's rights and remedies provided for at law and/or in the Loan Documents or otherwise, (b) a waiver of the Default or any other default under the Loan Documents, (c) an election of remedies, (d) an agreement to engage in negotiation of, or to obtain internal approval for, or any proposal for, a restructure of the Loan, (e) a course of dealing among the parties, or (f) an agreement with respect to any other matter not expressly and specifically agreed to by the parties in writing. This letter and any notice or notices previously sent by Lender should not be construed as requiring Lender to give any notice not expressly required by the Loan Documents or applicable law.

Lender's claims and demands with respect to this indebtedness, whenever made, whether for principal, interest, or otherwise, are intended to comply in all respects, both independently and collectively, with all applicable laws, including usury laws, and all such claims and demands are accordingly limited so that applicable laws are not violated.

One purpose of this communication is to collect a debt and any information obtained will be used for that purpose. This letter is not intended to advise you of your legal rights and obligations. We recommend that you obtain counsel of your choice to protect your interests.

JACKSON WALKER L.L.P.

By: _____
Kelly S. Hodge

cc:    David Williams
       Lloyd Stone
       John Billings
       Dustin Gibson

## EXHIBIT A
## THE PROPERTY

A 4.93 acre tract of land being all of Block 3 of the Presley Subdivision to the City of Bowie, Montague County, Texas according to the plat of same recorded in Volume 519, Page 602, Deed Records, Montague County, Texas and being all of Lot 2 and Lot 3 Block 2, the southwest 85.00 feet of Lot 2 and all of Lot 3 and Lot 4 Block 3 of the Weldon Clark Subdivision to the City of Bowie, Montague County, Texas according to the plat of same recorded in Volume 498, Page 313, Deed Records, Montague County, Texas and being the same tract of land described as tract one, two and three in deed to Bowie Real Estate Holdings, LP recorded in File No. 10602222, Official Public Records, Montague County, Texas and being more particularly described as follows:

BEGINNING at a one inch iron pipe found in the northeast line of Greenwood Street and in the southeast line of Lamb Street for the west corner of said Block 3 Presley Subdivision and the west corner of said Bowie Real Estate Holdings tract one;

THENCE North 45°13 '46" East with the southeast line of said Lamb Street 98.40 feet to a "Y" cut on concrete for the beginning of a 328.56 foot radius curve, the center of circle of said curve bears North 44°28'47" West;

THENCE Northeasterly along said curve through a central angle of 30°09' 19" for an arc length of 172.92 feet to an iron rod found for corner;

THENCE North 15°44' 14" East with the southeast line of said Lamb Street 18.00 feet to an iron rod found for the beginning of a 268.56 foot radius curve, the center of circle of said curve bears South 74°15'45" East;

THENCE Northeasterly along said curve through a central angle of 29°55'27" for an arc length of 140.26 feet to a "Y" cut on concrete for the north corner of said Block 3 Presley Subdivision;

THENCE North 45°13'46" East with the southeast line of said Lamb Street 30.00 feet to an iron rod set for the west corner of said Lot 2 Block 2 Weldon Clark Subdivision and for the west corner of said Bowie Real Estate Holdings tract two;

THENCE North 45°06' 15" East with the southeast line of said Lamb Street 95.00 feet to an iron rod found for the west corner of Lot 1 and for the north corner of said Lot 2 Block 2 Weldon Clark Subdivision and for the north corner of said Bowie Real Estate Holdings tract two;

THENCE South 44°45'44" East 224.67 feet to an iron rod found in the northwest line of Rock Street for the south corner of Lot 4 and for the east corner of said Lot 3 Block 2 Weldon Clark Subdivision and for the east corner of said Bowie Real Estate Holdings tract two;

Page 5

THENCE South 45°06' 15" West with the northwest line of said Rock Street 94.97 feet to a point in a building and in the northeast line of a platted alley for the south corner of said Lot 3 Block 2 and for the south corner of said Bowie Real Estate Holdings tract two;

THENCE South 44°46' 18" East 49.85 feet with the northeast line of said platted alley 49.85 feet to an iron rod set for the west corner of said Lot 2 Block 3 Weldon Clark Subdivision and for the west corner of said Bowie Real Estate Holdings tract three;

THENCE North 45°24' 18" East with the southeast line of said Rock Street and the northwest line of said Lot 2 Block 3 a distance of 84.13 feet to an iron rod found for the most westerly north corner of said Bowie Real Estate Holdings tract three;

THENCE South 44°35'36" East 112.27 feet to an iron rod fom;id in the southeast line of said Lot 2 and in the northwest line of said Lot 3 Block 3 Weldon Clark Subdivision for an inner corner of said Bowie Real Estate Holdings tract three;

THENCE North 45°14'29" East 105.88 feet to an iron rod found in the southwest line of Gray Street for the east corner of Lot 1 and for the north corner of said Lot 4 Block 3 Weldon Clark Subdivision and for the most northerly north corner of said Bowie Real Estate Holdings tract three;

THENCE South 44 °03 '57" East with the southwest line of said Gray Street 112.50 feet to a "Y" cut in a gutter in the northwest line of said Rock Street for the east corner, of said Lot 4 Block 3 Weldon Clark Subdivision for the east corner of said Bowie Real Estate Holdings tract three;

THENCE South 45°24' 18" West with the northwest line of said Rock Street 188.28 feet to a "PK" nail set in the northeast line of said platted alley for the south corner of said Lot 3 Block 3 Weldon Clark Subdivision and for the south corner of said Bowie Real Estate Holdings tract three;

THENCE North 44°46' 13" West 19.93 feet to a "Y" cut on concrete for corner;

THENCE South 45°13'43" West 20.21 feetto a "Y" cut on concrete for the beginning of a 268.56 foot radius curve, the center of circle of said curve bears North 44°46' 15" West and for the east corner of said Block 3 Presley Subdivision and for the east corner of said Bowie Real Estate Holdings tract one;

THENCE Southwesterly along said curve through a central angle of 30°08'24" for an arc length of 141.27 feet to a "Y" cut on concrete for corner;

Page 6

THENCE South 75°22'08" West with the northwest line of said Rock Street 42.00 feet to an iron rod found for the beginning of a 328.56 foot radius curve, the center of circle of said curve bears South 14°37'51" East;

THENCE Southwesterly along said curve through a central angle of 29°59'29" for an arc length of 171.98 feet to an iron rod found for corner;

THENCE South 45°13 '46" West with the northwest line of said Rock Street 88.08 feet to an iron rod found in the northeast line of said Greenwood Street for the south corner of said Block 3 Presley Subdivision and for the south corner of said Bowie Real Estate Holdings tract one;

THENCE North 44°46' 15" West with the northeast line of said Greenwood Street 289.95 feet to the POINT OF BEGINNING.

25337685v.2

After Recording, Please Return To:

Jackson Walker L.L.P.
2323 Ross Ave., Suite 600
Dallas, Texas 75201
Attn: Michael S. Held

## NOTICE OF SUBSTITUTE TRUSTEE'S SALE

**DATE:** March 17, 2020

**NOTE:** Promissory Note described as follows:

> Date:           December 14, 2017
>
> Borrower:    Central Hospital of Bowie LP
>
> Lender:       CrossFirst Bank
>
> Original Principal Amount:  $2,500,000.00

**DEED OF TRUST:**  Deed of Trust described as follows:

> Date:              December 14, 2017
>
> Grantor:        Bowie Real Estate Holdings LP, a Texas limited partnership
>
> Trustee:         Amy Fauss
>
> Beneficiary:   CrossFirst Bank
>
> Recorded in:  Document Number 1705221, of the Real Property Records of Montague County, Texas

**LENDER:** CrossFirst Bank

**GRANTOR:** Bowie Real Estate Holdings LP, a Texas limited partnership

**BORROWER:** Central Hospital of Bowie LP

**PROPERTY:** The real property more particularly described on Exhibit A, attached hereto

**SUBSTITUTE TRUSTEE:** Kelly S. Hodge

> Substitute Trustee's Mailing Address:
>
> > c/o Jackson Walker L.L.P.
> > 2323 Ross Ave., Suite 600

Case 20-70115-hdh11   Doc 27-1   Filed 07/10/20   Entered 07/10/20 17:52:17   Page 58 of 61


Dallas, Texas 75201
Attn: Kelly S. Hodge

**DATE AND TIME OF TRUSTEE'S SALE OF PROPERTY:**

April 7, 2020, being the first Tuesday of the month, to commence at 10:00 a.m., or within three hours thereafter.

**PLACE OF TRUSTEE'S SALE OF PROPERTY:**

The east door of the Montague County courthouse, or such other place designated for real property foreclosures pursuant to Section 51.002 of the Texas Property Code by the Commissioners Court of Montague County, Texas, in instrument(s) recorded in the real property records of Montague County, Texas.

Default has occurred in the payment of the Note and in the performance of the obligations of the Deed of Trust, which secures the Note. Because of such default, Lender, the owner of the Note and the holder of the Note and the Deed of Trust lien securing payment of the Note, for purposes of Section 51.002 of the Texas Property Code, has requested Trustee to sell the Property in accordance with the terms of the Deed of Trust and applicable law.

The Deed of Trust may encumber both real and personal property. Formal notice is hereby given of Lender's election to proceed against and sell both the real property and any personal property described in the Deed of Trust, in accordance with Lender's rights and remedies under the Deed of Trust and Section 9.604(a) of the Texas Business and Commerce Code (Texas UCC).

Therefore, notice is given that on the Date and Time of Trustee's Sale of Property and at the Place of Trustee's Sale of Property, I, Substitute Trustee or such other substitute trustee as Lender may subsequently appoint, will sell the Property by public sale to the highest bidder for cash or acceptable certified funds, in accordance with the Deed of Trust and applicable law. The sale and conveyance of the Property will be subject to all matters of record applicable to the Property which are superior to the Deed of Trust and to the permitted exceptions to title, if any, described in the Deed of Trust. Trustee has not made and will not make any covenants, representations, or warranties concerning the Property other than providing the successful bidder at the sale with a deed to the Property containing any warranties of title required by the Deed of Trust. The Property shall be sold "AS IS, WHERE IS", and WITH ALL FAULTS.


_____

Kelly S. Hodge, Substitute Trustee

NOTICE OF SUBSTITUTE TRUSTEE'S SALE *(Bowie)*                                         Page 2

25337691v.2

## EXHIBIT A

### Legal Description of the Property

A 4.93 acre tract of land being all of Block 3 of the Presley Subdivision to the City of Bowie, Montague County, Texas according to the plat of same recorded in Volume 519, Page 602, Deed Records, Montague County, Texas and being all of Lot 2 and Lot 3 Block 2, the southwest 85.00 feet of Lot 2 and all of Lot 3 and Lot 4 Block 3 of the Weldon Clark Subdivision to the City of Bowie, Montague County, Texas according to the plat of same recorded in Volume 498, Page 313, Deed Records, Montague County, Texas and being the same tract of land described as tract one, two and three in deed to Bowie Real Estate Holdings, LP recorded in File No. 10602222, Official Public Records, Montague County, Texas and being more particularly described as follows:

BEGINNING at a one inch iron pipe found in the northeast line of Greenwood Street and in the southeast line of Lamb Street for the west corner of said Block 3 Presley Subdivision and the west corner of said Bowie Real Estate Holdings tract one;

THENCE North 45°13 '46" East with the southeast line of said Lamb Street 98.40 feet to a "Y" cut on concrete for the beginning of a 328.56 foot radius curve, the center of circle of said curve bears North 44°28'47" West;

THENCE Northeasterly along said curve through a central angle of 30°09' 19" for an arc length of 172.92 feet to an iron rod found for corner;

THENCE North 15°44' 14" East with the southeast line of said Lamb Street 18.00 feet to an iron rod found for the beginning of a 268.56 foot radius curve, the center of circle of said curve bears South 74°15'45" East;

THENCE Northeasterly along said curve through a central angle of 29°55'27" for an arc length of 140.26 feet to a "Y" cut on concrete for the north corner of said Block 3 Presley Subdivision;

THENCE North 45°13'46" East with the southeast line of said Lamb Street 30.00 feet to an iron rod set for the west corner of said Lot 2 Block 2 Weldon Clark Subdivision and for the west corner of said Bowie Real Estate Holdings tract two;

THENCE North 45°06' 15" East with the southeast line of said Lamb Street 95.00 feet to an iron rod found for the west corner of Lot 1 and for the north corner of said Lot 2 Block 2 Weldon Clark Subdivision and for the north corner of said Bowie Real Estate Holdings tract two;

THENCE South 44°45'44" East 224.67 feet to an iron rod found in the northwest line of Rock Street for the south corner of Lot 4 and for the east corner of said Lot 3 Block 2 Weldon Clark Subdivision and for the east corner of said Bowie Real Estate Holdings tract two;

NOTICE OF SUBSTITUTE TRUSTEE'S SALE *(Bowie)*

Exhibit A

25337691v.2

THENCE South 45°06' 15" West with the northwest line of said Rock Street 94.97 feet to a point in a building and in the northeast line of a platted alley for the south corner of said Lot 3 Block 2 and for the south corner of said Bowie Real Estate Holdings tract two;

THENCE South 44°46' 18" East 49.85 feet with the northeast line of said platted alley 49.85 feet to an iron rod set for the west corner of said Lot 2 Block 3 Weldon Clark Subdivision and for the west corner of said Bowie Real Estate Holdings tract three;

THENCE North 45°24' 18" East with the southeast line of said Rock Street and the northwest line of said Lot 2 Block 3 a distance of 84.13 feet to an iron rod found for the most westerly north corner of said Bowie Real Estate Holdings tract three;

THENCE South 44°35'36" East 112.27 feet to an iron rod fom;id in the southeast line of said Lot 2 and in the northwest line of said Lot 3 Block 3 Weldon Clark Subdivision for an inner corner of said Bowie Real Estate Holdings tract three;

THENCE North 45°14'29" East 105.88 feet to an iron rod found in the southwest line of Gray Street for the east corner of Lot 1 and for the north corner of said Lot 4 Block 3 Weldon Clark Subdivision and for the most northerly north corner of said Bowie Real Estate Holdings tract three;

THENCE South 44 °03 '57" East with the southwest line of said Gray Street 112.50 feet to a "Y" cut in a gutter in the northwest line of said Rock Street for the east corner, of said Lot 4 Block 3 Weldon Clark Subdivision for the east corner of said Bowie Real Estate Holdings tract three;

THENCE South 45°24' 18" West with the northwest line of said Rock Street 188.28 feet to a "PK" nail set in the northeast line of said platted alley for the south corner of said Lot 3 Block 3 Weldon Clark Subdivision and for the south corner of said Bowie Real Estate Holdings tract three;

THENCE North 44°46' 13" West 19.93 feet to a "Y" cut on concrete for corner;

THENCE South 45°13'43" West 20.21 feetto a "Y" cut on concrete for the beginning of a 268.56 foot radius curve, the center of circle of said curve bears North 44°46' 15" West and for the east corner of said Block 3 Presley Subdivision and for the east corner of said Bowie Real Estate Holdings tract one;

THENCE Southwesterly along said curve through a central angle of 30°08'24" for an arc length of 141.27 feet to a "Y" cut on concrete for corner;

NOTICE OF SUBSTITUTE TRUSTEE'S SALE *(Bowie)*

Exhibit A

25337691v.2

THENCE South 75°22'08" West with the northwest line of said Rock Street 42.00 feet to an iron rod found for the beginning of a 328.56 foot radius curve, the center of circle of said curve bears South 14°37'51" East;

THENCE Southwesterly along said curve through a central angle of 29°59'29" for an arc length of 171.98 feet to an iron rod found for corner;

THENCE South 45°13 '46" West with the northwest line of said Rock Street 88.08 feet to an iron rod found in the northeast line of said Greenwood Street for the south corner of said Block 3 Presley Subdivision and for the south corner of said Bowie Real Estate Holdings tract one;

THENCE North 44°46' 15" West with the northeast line of said Greenwood Street 289.95 feet to the POINT OF BEGINNING.